UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 09-20795-CIV-SEITZ/O'SULLIVAN

BRIGHTSTAR CORP., a Delaware Corporation,

      Plaintiff,

v.

WSA DISTRIBUTING, INC., a foreign Corporation,
and CARLOS BECERRA, an individual,

      Defendants.

_____/

## ORDER DENYING MOTION TO DISMISS AND REQUIRING PLAINTIFF FILE ADDITIONAL SPECIFICS BY MARCH 24, 2010

THIS MATTER is before the Court on Defendants' Motion to Dismiss Plaintiff's Amended Complaint [DE-30]. On July 14, 2009, this Court granted Defendants' motion to dismiss Plaintiff's original complaint without prejudice. Plaintiff filed an amended complaint on July 30, 2009, alleging the same one count of fraud in the inducement [DE-27 "Am. Compl."]. Both Defendants move to dismiss the Amended Complaint on the ground that Plaintiff has not cured the defects in its original complaint and still fails to plead fraud with sufficient particularity. The Court has carefully considered the Motion, the response [DE-34] and reply [DE-35] thereto, and the pertinent case law.[1] Viewing the allegations of the Amended Complaint in the light most favorable to the Plaintiff, the Court finds that Plaintiff's allegations, while far from a model of clarity and particularity, meet the bare necessities to state a claim for fraud in the inducement against each Defendant as required by Rule 9(b) of the Federal Rules of Civil Procedure. Accordingly, Defendants' Motion to Dismiss is DENIED.

I.     **Background[2]**

    This dispute arises out of a messy "divorce" from an unsuccessful joint venture between Plaintiff

---

[1] At the March 12, 2010 hearing on this motion Defendants introduced three cases not referenced in their prior papers: *Behrman v. Allstate Life Ins. Co.*, 2005 U.S. Dist. LEXIS 7262 (S.D. Fla. Mar. 23, 2005) (No. 04-60926-CV-Seitz); *Hobbs v. BH Cars, Inc.*, 2004 U.S. Dist. LEXIS 10735 (S.D. Fla. Jun. 4, 2004) (No. 04-60327-CV-Dimitrouleas); *C.S.I.R. Enterp., Inc. v. Sebrite Agency, Inc.*, 214 F.Supp.2d 1276 (M.D. Fla. 2002). Though this deprived Plaintiff of the opportunity to respond and provide the Court with its own persuasive cases, because the Court has denied Defendants' motion, Plaintiff will not be prejudiced if the Court considers Defendants' cases.

[2] These allegations, taken from Plaintiff's Amended Complaint, are taken as true for the purposes of this motion. *Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007).

Brightstar Corporation ("Brightstar"), a wholesale distributor of wireless technology, and Defendant WSA

Distributing ("WSA"), a retail distributor of wireless technology.  For more than a decade the companies' CEO's,

Marcelo Claure, of Brightstar and Defendant Carlos Becerra, of WSA, maintained a friendship through which

they established personal business investments and participated in each other's personal matters.  *See* Am.

Compl. ¶ 18.  In the spring of 2006, Mr. Becerra and Mr. Claure decided that WSA and Brightstar would create a

joint venture that would utilize each companies' expertise.  *Id.* ¶¶ 23, 24.  The joint venture's first project would

be to acquire WSA's Mexico subsidiary ("WSA Mexico").  *Id.* ¶¶ 23, 24, 31.  On May 14, 2007, Brightstar and

WSA executed the Operating Agreement, which formed the joint venture Brightstar Retail.  *Id.* ¶¶ 45-48.  Also

on, May 14, 2007, Brightstar Retail and WSA executed the Stock Purchase Agreement, which provided that

Brightstar Retail would acquire ninety-nine percent of WSA Mexico's stock.[3]  *Id.*  The Operating Agreement also

provided Brightstar Retail would make a $3.5 million loan to WSA Mexico to pay off inter-company debt owed

WSA.  *Id.* ¶¶ 59-60.

In short, the joint venture failed.  Brightstar now brings this action alleging the joint venture and stock

purchase agreement were all part of a scheme intended to induce it to purchase and pay off the debt of the ailing

WSA Mexico, and to make a loan to WSA Mexico, $650,000 of which was funneled back up to WSA and Mr.

Becerra.  Defendants argue that Brightstar's Amended Complaint fails to plead fraud with the requisite

particularity, and the specific statements of material fact made, knowledge of falsity on the part of the person

making the statement, justifiable reliance on the fraudulent statement, damage, and causation.

## II.      Legal Standard for a Rule 9(b) Motion to Dismiss

In evaluating whether a complaint is sufficient to survive a motion to dismiss the Court "must accept the

well-pleaded allegations of the complaint as true and draw all reasonable inferences therefrom in favor of the

complaining party." *Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007).

Allegations of fraud, however, also must satisfy the heightened pleading requirement of Rule 9(b) of the Federal

Rules of Civil Procedure ("Rule 9(b)"), which requires that "a party must state with particularity the

---

[3] Brightstar's Mexican subsidiary, Brightstar Mexico, acquired the remaining one percent.  *See* Am. Compl.

circumstances constituting fraud." Fed. R. Civ. P. 9(b).[4]  To state a claim for fraud, Brightstar must identify: (1)

the precise misrepresentations made; (2) the time and place of and persons responsible for the misrepresentations;

(3) the content and manner in which the statements misled Brightstar; and (4) what the Defendants gained by the

alleged fraud. *Ambrosia Coal & Const. Co.*, 482 F.3d at 1316-17.  Additionally, when multiple defendants are

involved, the complaint must distinguish among defendants to inform each defendant of his or her respective role

in the fraud. *See id.* at 1317.  "The particularity rule serves an important purpose in fraud actions by alerting

defendants to the precise misconduct with which they are charged and protecting defendants against spurious

charges of immoral and fraudulent behavior." *United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301,

1311 (11th Cir. 2002).

### III.    Discussion

The Amended Complaint alleges misrepresentations regarding four things: (1) Mr. Becerra's level of

effort in the joint venture, (2) WSA Mexico's future growth potential, (3) assurances against financial loss, and

(4) manipulated financial data.  Specifically, Brightstar avers that in spring 2006 through May, 2007, Mr. Becerra

and WSA made repeated false representations concerning the effort Mr. Becerra would put into the joint venture,

*see* Am. Compl. ¶¶ 34, 35, 39, 43, 54, 55; WSA Mexico's future growth potential, *id.* ¶¶ 24, 28, 31, 35, 39, 41,

43, 58; assurances against financial losses, *id.* ¶¶ 40, 41, 44, 51; WSA Mexico's financial condition, *id.* ¶¶ 42,

50-52, 56, 58-60, 62, 63; and Mr. Becerra and WSA manipulated WSA Mexico's financial data and obscured

payments to WSA. *Id.*  Furthermore, Brightstar alleges Mr. Becerra and WSA made these material

misrepresentations and omissions knowing they were false and that Brightstar would rely upon these

representations, in order to induce Brightstar to enter into the joint venture, that Brightstar relied upon these

representations and omissions, had Brightstar known the representations were false, it would not have entered

into the Operating Agreement, it would not have formed Brightstar Retail, and it would not have authorized

---

[4] Defendants contend "Plaintiff is required to plead each element of its fraud claim with the *highest degree of particularity*" because of Brightstar's extensive due diligence and access to WSA Mexico's financial information. [DE 30, at 7]. Defendants misread *Hill v. Morehouse Medical Assoc., Inc.*, 2003 WL 22019936 (11th Cir. 2003) for this proposition. If anything, *Hill* stands for the proposition that being privy to financial information provides the necessary indicia of reliability in a complaint alleging fraud. *Id.* at *5.

Brightstar Retail to enter into the Stock Purchase Agreement. *Id.* ¶ 55.

> A.      *Effort Mr. Becerra Would Put Into the Joint Venture*

Brightstar alleges WSA and Mr. Becerra repeatedly misrepresented that Mr. Becerra would actively lead the joint venture when it was formed. Am. Compl. ¶¶ 28, 31, 34, 35, 44. Mr. Becerra made these representations to Mr. Claure over the telephone throughout the spring and summer of 2006. *Id.* ¶ 34, 35. Then, on October 8, 2006 at the Sofitel Hotel in Chicago in a meeting attended by Mr. Becerra, Mr. Claure, Eric Hayes, Jesus Aguila, Andres Chisco, Arlene Vargas, Carlos Lomniczi and Gabriel Angeles Blanco WSA and Mr. Becerra again made this representation. *Id.* ¶ 40. Additionally, between October 8, 2006 and May 2007, Mr. Becerra, Rodney White (the general manager of WSA Mexico) and others from WSA continued to promise Mr. Claure and others, such as Mr. Lomniczi, that Mr. Becerra would actively lead the joint venture. *Id.* ¶ 44. Also, the Operating Agreement provides that Mr. Becerra was the General Manager and chairman of the management committee. *Id.* ¶ 46. The representations that Mr. Becerra would work for the benefit of the joint venture were material.[5]

Acknowledging that knowledge is an element of fraud, Defendants argue that Plaintiffs failed to plead that Defendants knowingly made any misrepresentations with sufficient particularity. DE-30, at 10. Rule 9(b), however, does not require that Plaintiff plead every element of the fraud claim with particularity, only "the *circumstances* constituting fraud." Fed. R. Civ. P. 9(b) (emphasis added). As the second sentence of Rule 9(b) makes clear: "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* Thus, Brightstar's general averments are consistent with Rule 9(b). *See, e.g.,* Am. Compl. ¶ 27 ("Mr. Becerra and WSA made these statements, knowing they were false").

Brightstar has two significant hurdles in resting on this alleged misrepresentation as a basis for fraud in the inducement. First, it ultimately may have difficulty proving knowledge of falsity–that Mr. Becerra never intended to work for the benefit of the joint venture. Moreover, because these representations were reduced to

---

[5] *In re Midway Airlines, Inc.,* 6 F.3d 492, 495 (7th Cir. 1993) (if a party contracted for Luciano Pavarotti to sing, they cannot be compelled to accept performance from Michael Jackson; *in re Da-Sota Elevator Co.,* 939 F.2d 654, 655-56 (8th Cir. 1991) (if the parties bargained for Luciano Pavarotti to sing, no other would be expected to take his place as a performer at "showtime").

writing in the Operating Agreement, *see* DE-47-1 ("Operating Agreement"), Brightstar's remedy for failure to perform the duties set forth in the Operating Agreement is a cause of action for breach of contract, not fraud. Thus, this alleged misrepresentation may be a questionable legal basis for fraud in the inducement.

   B.   *Misrepresentations About WSA Mexico's Future Growth Potential*

Brightstar alleges that beginning in the spring of 2006, on the telephone, and in person, Mr. Becerra misrepresented to Mr. Claure and Brightstar, the future growth potential of WSA Mexico. *See* Am. Compl. ¶¶ 28, 29. Defendants argue that any alleged representations concerning WSA Mexico's viability and potential future growth were "nothing more than statements of opinion or puffing" and are therefore "not statements of material fact." DE-30, at 9. The Court disagrees. Mr. Becerra told Mr. Claure that WSA Mexico was a thriving business that was established and positioned in Mexico with existing, established business contacts and a demand for more inventory than it could currently provide Am. Compl. ¶¶ 28, 31. Additionally, Mr. Becerra told Mr. Claure that with an infusion of money from Brightstar, WSA Mexico could purchase the necessary, additional inventory to fulfill the ever-increasing demands for inventory that it had from existing customers and vendors. *Id.* ¶¶ 28, 39. Brightstar further avers that Mr. Becerra told Mr. Claure and Brightstar "there were *actual business deals* that could be done if Brightstar spent the money." *Id.* ¶ 41 (emphasis added). Unlike the conclusory allegations "of strong future performance and growth" Brightstar averred in its first complaint, *see* DE-1 ¶ 13, these are statements of fact. Thus, Brightstar has alleges with sufficient particularity that Defendants made misrepresentations about WSA Mexico's future growth potential.

Defendants contend that when Brightstar began its due diligence into WSA Mexico June 2006, it had "full and unfettered access" to "WSA Mexico's financial condition, accounts receivables, inventory, debt, and other liabilities." DE-30, at 3. In that regard, Brightstar claims that "as a result of this initial review, Brightstar discovered there were issues with WSA Mexico's financial performance." Am. Compl. ¶ 36. Considering Plaintiff's extensive due diligence into WSA Mexico, which uncovered financial performance issues, there is a question as to the reasonableness of Brightstar's reliance on Mr. Becerra's and WSA's representations about WSA's growth potential. However, this argument, which may be appropriate for a motion for summary

judgment, does not address Rule 9(b) issues; it goes to the merits of the claim rather than any pleading deficiency.

C.      *False Assurances Against Financial Losses*

In connection with the issues Brightstar uncovered about WSA Mexico's finances during its due diligence, Brightstar avers that on October 8, 2006 Mr. Becerra, Mr. Claure, Eric Hayes, Jesus Aguila, Andres Chisco, Arlene Vargas, Carlos Lomniczi and Gabriel Angeles Blanco met at the Sofitel Hotel in Chicago to discuss these concerns. Am. Compl. ¶¶ 40. At that meeting, Mr. Becerra represented that he personally, along with WSA would ensure that Brightstar did not come out of pocket for WSA Mexico's current financial condition because the contingencies identified by Brightstar in the financial review would continue to be born by and be the responsibility of WSA when WSA Mexico was purchased by the joint venture. *Id.* Furthermore, Mr. Becerra and WSA "represented" that Brightstar "would be fully insured against any losses," that, Brightstar would, in effect, "be indemnified and protected 100% for all financial problems of WSA Mexico." *Id.* ¶ 41. These allegations sufficiently apprise Mr. Becerra and WSA of the allegations of representations that Mr. Becerra personally and/or WSA would indemnify Brightstar from any losses on the deal.

Defendants argue that as a result of Plaintiff's extensive due diligence, Brightstar cannot allege *justifiable* reliance on any of the assurances against financial losses. *See* DE-30, at 11-12. Considering the absence of a written guarantee of these assurances, there is a question as to the reasonableness of Brightstar's reliance on the representations. However, this argument, which also may be appropriate for a motion for summary judgment, also does not address Rule 9(b) issues; it goes to the merits of the claim rather than any pleading deficiency.

Furthermore, Defendants argue the Amended Complaint does not distinguish between the alleged misrepresentations made by Mr. Becerra on behalf of himself from those made by Mr. Becerra on behalf of WSA.[6] DE-30, at 8, 9. Defendants are correct that with multiple defendants, the Complaint must distinguish

---

[6] Defendants actually concede the Amended Complaint does provide this distinction. DE-30, at 9 ("With few exceptions, the allegations in the Amended Complaint are unclear").

among defendants to inform each defendant of his or her respective role in the fraud. *Ambrosia Coal & Const. Co.*, 482 F.3d at 1317. What Defendants fail to acknowledge is that under Florida law, a corporate officer may be individually liable for torts he commits while acting as the representative of the corporate entity, even if his acts are within the course and scope of his employment, and it does not matter what liability attaches to the corporation for the tort. *See Aboujaoude v. Poinciana Development Company II*, 509 F.Supp.2d 1266, 1277 (S.D. Fla. 2007) (Huck, J.). Moreover, Brightstar alleges that Mr. Becerra personally engaged in the fraud for his own benefit and in his personal capacity. Am. Compl. ¶¶ 8, 17, 41, 63, 74, 77.

        D.     *Defendants Manipulated, Obscured and Misrepresented WSA Mexico's Financial Data*

      Notwithstanding Brightstar's extensive due diligence and the October 8, 2006 meeting with WSA where Brightstar confronted WSA with financial performance issues uncovered during the due diligence, Brightstar alleges that Mr. Becerra and WSA caused WSA Mexico to manipulate, obscure or blatantly misrepresent the financial data that WSA and WSA Mexico provided to Brightstar. *See* Am. Compl. ¶¶ 49-51. According to Brightstar, the financial information provided had missing funds, missing transactions, missing inventory, misrepresented finances, undisclosed debt, bad receivables and a myriad of other financial problems, including artificially inflated profit margins on the sale of certain goods by entering data for the costs of goods sold that was lower than the real costs. *Id.* ¶¶ 42, 49-50. Furthermore, Brightstar alleges that from this false financial information, schedules were prepared and attached to the Stock Purchase Agreement. *Id.* ¶¶ 36, 49-51.

      In the Amended Complaint, Brightstar adequately pleads that Mr. Becerra and WSA manipulated WSA Mexico's financial information and obscured payments of over $650,000 from WSA Mexico to WSA. Am. Compl. ¶¶ 59-60. Specifically, Brightstar avers that the Operating Agreement provided that Brightstar would make a $3.5 million loan to WSA Mexico to pay off inter-company debt owed WSA and that the amount of the loan, $3.5 million, was based on the December 2006 financial disclosures. *Id.* ¶¶ 59-60. Brightstar further alleges that on August 7, 2007, Brightstar directed Brightstar Retail to loan $3.5 million to pay off inter-company debt owed to WSA. *Id.* ¶ 60. According to Brightstar, between January and May 2007 WSA Mexico made payments to WSA that exceeded $650,000. As such, Brightstar avers, "Mr. Becerra and WSA obscured and

omitted from Brightstar material information that the amount of real inter-company debt was more than $650,000 United States dollars less than was represented." *Id.* ¶ 59.

Nonetheless, Defendants argue these allegations about the loan "are devoid of any specificity." DE-35, at 4-5. Defendants note the ambiguity in the terms "inter-company debt" and "convince." *Id.* However, since Brightstar identifies the Operating Agreement as the document in which the loan is memorialized, which states[7] that "WSA Mexico shall use [the loan] . . . to repay its liabilities to WSA," Operating Agreement § 7.1; Defendants are well apprised of the meaning of the term "inter-company debt." Likewise, Defendants misconstrue Plaintiff's pleadings by arguing Brightstar "fail[ed] to specifically allege what was represented to Brightstar to 'convince' it to loan money to WSA Mexico." DE-35, at 4. Brightstar does not allege they were "convinced" to make a loan, instead, Brightstar argues it was "convinced" to loan $650,000 more than was necessary for WSA Mexico to repay its liabilities to WSA. *See* Operating Agreement § 7.1.

## IV.    The Court Requests a More Definite Statement

The fact that the Amended Complaint meets the minimum requirements of Rule 9(b) saves it from a Rule 9 motion to dismiss. However, in order to narrow and confine the issues to what is material and relevant, the Court finds it expedient to require Plaintiff to furnish a more definite statement of certain matters stated in the Amended Complaint. Accordingly, the Court, *sua sponte*, directs Plaintiff to file a more definite statement that identifies matters stated in the Amended Complaint in the following respects: (1) the financial records and other documents that evidence the "missing funds, missing transactions, missing inventory, misrepresented finances, undisclosed debt, bad receivables and a myriad of other financial problems," Am. Compl. ¶ 42, and (2) the "obscured and omitted . . . material information that the amount of real inter-company debt was more than $650,000 United States dollars less than was represented." *Id.* ¶ 59.

The mere fact that more particularity is elicited should not be considered a deficiency in the pleadings. It is simply a request to amplify the pleadings by a more definite statement to aid the court and parties in a more

---

[7] Though the Operating Agreement is outside the pleadings, it demonstrates the spurious nature of certain of Defendants' arguments.

orderly and expeditious disposition of the case; to clear up ambiguities, uncertainties and indefiniteness in the complaint; and to limit the issues.

**V.     Conclusion**

For the reasons discussed above, the Court will deny Defendants' Motion to Dismiss the Amended Complaint. Additionally, to assist the Court in refining the issues, Plaintiff must file a more definite statement. Accordingly, it is

ORDERED that

(1) Defendant's Motion to Dismiss [DE 30] is DENIED.

(2) No later than **Wednesday, March 24, 2010**, Brightstar must file a more definite statement identifying the alleged missing, omitted, obscured, misrepresented, and/or manipulated financial information that it claims induced it to enter into the Operating Agreement and/or agree to make the loan identified in the Operating Agreement.

DONE and ORDERED in Miami, Florida, this _17_ day of March, 2010.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc:
Magistrate Judge John J. O'Sullivan
Counsel of Record